EXHIBIT B

IN THE CIRCUIT COURT OF ST. CLAIR COUNTY
STATE OF ILLINOIS
TWENTIETH JUDICIAL CIRCUIT

AMY MORRIS, PLAINTIFF     )
             )
AND           )
             )
NEW HAMPSHIRE INSURANCE COMPANY  )
as Subrogee of N.G. HEIMOS GREENHOUSES, INC., )
AND N.G. HEIMOS GREENHOUSES, INC.  )
             )
    Plaintiffs Intervenors,    )
             )
v.            )
             )
HANDY FERTILIZER, INC.,     )
Serve at: Robert D.      )
  Roger Quirin       )
  5959 Floraville Road    )
  Millstadt, IL 62260     )
             )   Cause No. 13-L-53
and           )
             )
P AND H MANUFACTURING CO., INC.  )
Serve at:         )
  Dennis Hendrix     )   **COMPLAINT**
  604 S. Lodge Street    )
  Shelbyville, IL 62565    )   **JURY TRIAL DEMANDED**
             )
and           )
             )
THURSTON MANUFACTURING COMPANY  )
Serve at:         )
  Layton W. Jensen     )
  State Spur 87A Highway 9   )
  Thurston, NE 68062    )
             )
and           )
             )
DALTON AG PRODUCTS, INC.    )
Serve at:         )
  Richard Dalton      )
  E. Van Buren St.     )
  P.O. Box 70      )
  Lenox, IA 50851     )
             )
and           )

PARKER-HANNIFIN CORPORATION )
Serve at: )
    C T Corporation System )
    1300 E 9th Street )
    Cleveland, OH  44144 )
     )
and )
     )
CHEMI-TROL CHEMICAL CO. )
Serve at: )
    CT Corporation System )
    208 south LaSalle Street, Suite 814 )
    Chicago, IL  60604 )
     )
and )
     )
AMERICAN WELDING & TANK )
Serve at: )
    4718 Gettysburg Road, Suite 300 )
    Mechanicsburg, PA  17055 )
     )
and )
     )
PAUL HERRMANN )
Serve at: )
    6233 Werner Road )
    Millstadt, IL  62260 )
     )
and )
     )
RUTH HERRMANN )
Serve at: )
    6233 Werner Road )
    Millstadt, IL  62260 )
     )
                    Defendants. )



## COMPLAINT

COMES NOW Plaintiff, NEW HAMPSHIRE INSURANCE COMPANY as Subrogee of

N.G. HEIMOS GREENHOUSES, INC., (NHIC) and N.G. HEIMOS GREENHOUSES, INC.

("Heimos"), by and through counsel, and for their Complaint against Defendants Handy

Fertilizer, Inc., P and H Manufacturing co., Inc., Thurston Manufacturing Company, Dalton AG

Products, Inc., Parker-Hannifin Corporation, Chemi-trol Chemical Co., American Welding & Tank, Paul Herrmann, and Ruth Herrmann states and alleges as follows:

### PARTIES

1.      Plaintiff NHIC is, and at all times relevant hereto was, a Pennsylvania corporation with its principal offices located in the State of New York, and for all relevant timeframes set forth herein, insured the real and personal property of N. G. Heimos Greenhouses, Inc. ("Heimos"), including its property located at 6627 Route 158, Millstadt, Illinois. (the "Property").

2.      Plaintiff Heimos is, and at all times relevant hereto was, a seasonal crop grower incorporated under the laws of the State of Missouri, and is and was doing business within St. Clair County, Illinois.  Plaintiff Heimos owns and operates a greenhouse complex located at 6627 Route 158, Millstadt, Illinois, 62260.  This property suffered the tortious conduct by Defendants which forms the basis of this Complaint.

3.      Defendant Handy Fertilizer, Inc. ("Handy") is, and was at all times relevant hereto, a wholesale fertilizer and farm supplies merchant and vehicle and equipment lessor incorporated under the laws of the State of Illinois, and is and was doing business and offering its products for sale and use within St. Clair County, Illinois.

4.      Defendant P and H Manufacturing Co., Inc. ("P and H"), is and was at all times relevant hereto, a farm and agriculture vehicle and products manufacturer incorporated under the laws of the State of Delaware, and is and was doing business offering its products for sale and use throughout the United States and in particular in St. Clair County, Illinois.

5.      Defendant Thurston Manufacturing Company ("Thurston"), is, and was at all times relevant hereto, a farm and agriculture vehicle and products manufacturer incorporated

under the laws of the State of Nebraska, and is and was doing business offering its products for sale and use throughout the United States and in particular in St. Clair County, Illinois.

6. Defendant Dalton AG Products, Inc. ("Dalton"), is, and was at all times relevant hereto, a manufacturer and vendor of fertilizer application vehicles incorporated under the laws of the State of Iowa. Defendant Dalton is and was doing business and offering its products for sale and use throughout the United States and in particular in St. Clair County, Illinois.

7. Defendant Parker-Hannifin Corporation ("Parker") is, and was at all times relevant hereto, a manufacturer and vendor of fertilizer application vehicles incorporated under the laws of the State of Ohio. Defendant Parker is and was doing business and offering its products for sale and use throughout the United States and in particular in St. Clair County, Illinois.

8. Defendant Chemi-trol Chemical Co., ("Chemi-trol") is, and was at all times relevant hereto, in the business of manufacturing, distributing and servicing herbicide spraying equipment, gas storage tanks, specialty automotive tools, and herbicide and pesticide supplies, incorporated under the laws of the State of Ohio. Defendant Chemi-trol is and was doing business and offering its products for sale and use throughout the United States and in particular in St. Clair County, Illinois.

9. Defendant American Welding & Tank, LLC, ("American") is, and was at all times relevant hereto, in the business of manufacture, service and technology for gas applications involving pressure vessels and precision valves. American is incorporated under the laws of the State of Delaware and is and was doing business and offering its products for sale and use throughout the United States and in particular in St. Clair County, Illinois.

13-L-53

Page 4 of 22

10.     Defendant Paul Herrmann ("Mr. Herrmann"), was and is a resident and citizen of the State of Illinois residing in St. Clair County, Illinois residing at 6233 Werner Road, Millstadt, Illinois. Upon information and belief, Defendant Paul owns and operates a farm across the road from the Property.

11.     Defendant Ruth Herrmann ("Mrs. Herrmann"), was and is a resident and citizen of the State of Illinois residing in St. Clair County, Illinois residing at 6233 Werner Road, Millstadt, Illinois. Upon information and belief, Defendant Ruth owns and operates a farm across the road from the Property.

## VENUE AND JURISDICTION

12.     Venue is proper in the Circuit Court of St. Clair County, Illinois, under 735 Ill. Comp. Stat. 5/2-101 in that the incidents described herein and upon which this claim is brought occurred in St. Clair County, Illinois.

13.     Jurisdiction is proper because the Defendants are subject to personal jurisdiction under 735 Ill. Comp. Stat. 5/2-209 by reason of their commission of tortious acts within the State of Illinois.

## GENERAL ALLEGATIONS

14.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

15.     On or about May 12, 2012 Defendant Mr. Herrmann hooked up vehicular equipment consisting of at least a tractor, and fertilizer application vehicles designed, manufactured, sold and injected into the stream of commerce by Defendants Handy, P and H, Thurston, Dalton, Parker, Chemi-trol and American.

13-L-53

16.    Defendant Mr. Herrmann drove the vehicular equipment to a field he was farming and upon information and belief began applying anhydrous ammonia fertilizer.

17.    During the application of the fertilizer, a vehicle incident took place resulting in the spill and/or release of highly pressurized fertilizer from the vehicles.

18.    The fertilizer traveled across the field where Mr. Hermann was operating the vehicle and to the Heimos greenhouse facility where it caused massive crop damage and losses of thousands of plants.

19.    Subsequent to the events described herein, Heimos made a claim under its policy of insurance with NHIC for the damages and Plaintiff NHIC extended coverage.  Plaintiff NHIC has become subrogated to the rights of Heimos to the extent it afforded insurance coverage for this loss.

## COUNT I

### (Negligence – Handy Fertilizer)

20.    The facts and allegations contained in the paragraphs above are incorporated herein by reference.

21.    Defendant Handy leased vehicles and/or vehicular applicators including a nurse tank, running gears, and anhydrous ammonia applicator – to Defendants Mr. and/or Mrs. Herrmann for immediate use.

22.    Defendant Handy owed a duty to those who it should have expected would use the leased vehicles and/or vehicular applicators, and those endangered by their probable use, to exercise reasonable care to ensure they were safe for the use for which they were leased.

23.    Defendant Handy also owed a duty to those who Defendant Handy should have expected would use the vehicles and/or vehicular applicators, and those endangered by their

probable use, to exercise reasonable care by disclosing the vehicles and/or vehicular applicators actual condition to those who may be expected to use it.

    24.    Defendant Handy is liable to Plaintiff because it breached its duties in at least the following respects:

    a.    Defendant Handy failed to inspect, or adequately inspect, the vehicles and/or vehicular applicators prior to leasing them to Defendants Mr. and/or Mrs. Herrmann for their immediate and intended use.

    b.    Defendant Handy failed to carefully, repair, maintain, fix, remedy, or replace parts or components of the vehicles and/or vehicular applicators that contributed to cause the injury to Plaintiffs, including but not limited to the anhydrous ammonia hose, breakaway coupler, excess flow valve, and trailer hitches.

    c.    Defendant Handy failed to provide adequate, proper, and reasonable information, instructions, and warnings regarding the maintenance and use of the vehicles and/or vehicular applicators, including, but not limited to, hazards associated with the intended, recommended, and foreseeable use of the hose, breakaway coupler, excess flow valve, and trailer hitches.

    d.    Defendant Handy failed to disclose the actual condition of the leased chattels, including hazards associated with the intended, recommended, and foreseeable use of the hose, breakaway coupler, excess flow valve and trailer hitches.

    e.    Defendant Handy failed to provide proper training on the use of the vehicles and/or vehicular applicators to its lessors.

25.     Defendant Handy is liable to Plaintiffs NHIC and Heimos because the aforementioned negligent commissions and omissions were the direct and proximate cause of the injuries and damages suffered by Plaintiffs NHIC and Heimos.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant Handy — and all defendants jointly and severally — for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT II

### (Negligent Entrustment – Handy Fertilizer)

26.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

27.     Upon information and belief, Defendant Herrmann was inexperienced or reckless in using the vehicles and/or vehicular applicators of anhydrous ammonia leased to him by Defendant Handy.

28.     Defendant Handy knew of or should have known of Defendant Herrmann's inexperience or recklessness.

29.     Plaintiffs NHIC and Heimos' damages were directly and proximately caused by the negligence and carelessness of Defendant Handy in at least the following respects, in that:

a.      Defendant Handy negligently entrusted dangerous articles, including but not limited to the anhydrous ammonia applicator, running gears, breakaway coupler, nurse tank, and hose, to Defendant Herrmann with knowledge, or reason to know, that Herrmann was inexperienced and reckless.

b.    Defendant Handy failed to adequately and properly train Herrmann.

c.    Such further acts of negligence as discovery and evidence will reveal.

30.    As a direct and proximate result of Defendant Handy's negligent entrustment of its anhydrous ammonia applicator to Defendant Herrmann, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant Handy – and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT III

### (Strict Liability – Product Defect – P and H)

31.    The facts and allegations contained in the paragraphs above are incorporated herein by reference.

32.    Defendant P and H manufactured and designed the nurse tank with an excess flow valve for the purpose of preventing the uncontrolled release of anhydrous ammonia if the hose connecting the nurse tank to the anhydrous ammonia applicator becomes uncoupled during a vehicular incident.

33.    Upon information and belief, the excess flow valve existed on the day of the vehicular incident mentioned here in substantially the same condition as when it left Defendant P and H's control.

34.    Defendant P and H is strictly liable to Plaintiff because the anhydrous ammonia nurse tank was defective and unreasonably dangerous in at least the following respects:

a.    Upon information and belief, a physical defect in the excess flow valve prevented the spring loaded check disc from forming a seal with the valve body upon uncoupling.

13-L-53

b.   Defendant P and H failed to provide adequate, proper, and reasonable information, instructions, and warnings regarding the maintenance and use of the anhydrous ammonia nurse tank, including hazards associated with the intended, recommended, and foreseeable use of the anhydrous ammonia nurse tank.

c.   Defendant P and H failed to provide adequate, proper, and reasonable information, instructions, and warnings regarding the maintenance and use of the excess flow valve, including hazards associated with the intended, recommended, and foreseeable use of the excess flow valve.

35.   Defendant P and H is strictly liable to Plaintiffs NHIC and Heimos because the aforementioned defect was the direct and proximate cause of the injury described above.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant P and H – and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00) that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT IV

### (Negligence – P and H)

36.   The facts and allegations contained in the paragraphs above are incorporated herein by reference.

37.   P and H was negligent by failing to use ordinary care in designing, manufacturing, and selling the anhydrous ammonia nurse tank when it knew or should have known that it was defective and unreasonably dangerous when put to its intended use in that the anhydrous ammonia nurse tank could inadvertently release anhydrous ammonia when involved in a vehicular incident.

38.     Defendant P and H's negligence in designing, assembling, manufacturing, selling, and distributing the anhydrous ammonia nurse tank makes Defendant P and H liable under the doctrine of res ipsa loquitor as such a release of anhydrous ammonia would not occur absent the manufacturer's negligence.

39.     The incident on May 12, 2012, wherein Plaintiff's property was damaged, would not have occurred without negligence on the part of Defendant P and H in the design, manufacturing, and testing of the anhydrous ammonia nurse tank; the product was under the control and management of Defendant P and H at the time it was negligently designed, manufactured, and sold.

WHEREFORE, Plaintiffs NHIC and  Heimos pray judgment against Defendant P and H – and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT V

### (Strict Liability – Thurston)

40.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

41.     Defendant Thurston manufactured and designed the anhydrous ammonia applicator with a hitching mechanism to connect to the nurse tank running gears.

42.     The hitch components existed on the anhydrous ammonia applicator when the applicator left Defendant Thurston's control.

43.     Defendant Thurston is strictly liable to Plaintiffs NHIC and Heimos because the anhydrous ammonia applicator hitch was defective and unreasonably dangerous in at least the following respects:

a.   The design of the hitch components connecting the anhydrous ammonia applicator to the nurse tank running gears are susceptible to unintended disengagement.

b.   Defendant Thurston failed to provide adequate, proper, and reasonable information, instructions, and warnings regarding the maintenance and use of the hitch components, including hazards associated with the intended, recommended, and foreseeable use of the hitch components.

44.   Defendant Thurston is strictly liable to Plaintiffs because the aforementioned defects were a direct and proximate cause of the incident described above.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant Thurston -- and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT VI

### (Negligence – Thurston)

45.   The facts and allegations contained in the paragraphs above are incorporated herein by reference.

46.   Defendant Thurston was negligent by failing to exercise ordinary care in designing, manufacturing, and selling the anhydrous ammonia applicator.  Defendant Thurston knew or should have known that the hitching mechanism used to connect the applicator to the nurse tank running gears was defective and unreasonably dangerous when put to its intended use as the hitching mechanism could inadvertently become disconnected in a vehicular incident resulting in a fertilizer release and damage.

47.     Defendant Thurston's negligence in designing, assembling, manufacturing, selling, and distributing the anhydrous ammonia applicator makes Defendant Thurston liable under the doctrine of res ipsa loquitor as such a release of anhydrous ammonia would not occur absent the manufacturer's negligence.

48.     The incident on May 12, 2012, wherein Plaintiff NHIC and Heimos' property was damaged, would not have occurred without negligence on the part of Defendant Thurston in the design, manufacturing, and testing of the anhydrous ammonia applicator; the product was under the control and management of Defendant Thurston at the time it was negligently designed, manufactured, and sold.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant Thurston – and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT VII

### (Strict Liability – Dalton)

49.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

50.     Defendant Dalton manufactured and designed the anhydrous ammonia applicator and/or running gears to connect with a hitching mechanism.

51.     The hitch components existed on the anhydrous ammonia applicator and running gears in the same condition as when they left Defendant Dalton's control.

52.     Defendant Dalton is strictly liable to Plaintiffs NHIC and Heimos because the anhydrous ammonia applicator hitch and running gear hitch were defective and unreasonably dangerous in at least the following respects:

a. The design of the hitch components connecting the anhydrous ammonia applicator to the running gears are susceptible to unintended disengagement.

b. Defendant Dalton failed to provide adequate, proper, and reasonable information, instructions, and warnings regarding the maintenance and use of the hitch components, including hazards associated with the intended, recommended, and foreseeable use of the hitch components.

53. Defendant Dalton is strictly liable to Plaintiffs because the aforementioned defects were a direct and proximate cause of the incident described above.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant P and H – and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT VIII

### (Negligence - Dalton)

54. The facts and allegations contained in the paragraphs above are incorporated herein by reference.

55. Defendant Dalton was negligent by failing to exercise ordinary care in designing, manufacturing, and selling the anhydrous ammonia applicator and running gears. Defendant Dalton knew or should have known that both mechanisms were defective and unreasonably dangerous when put to their intended use as they could inadvertently become disconnected in a vehicular incident resulting in a fertilizer release and damage.

56. Defendant Dalton's negligence in designing, assembling, manufacturing, selling, and distributing the anhydrous ammonia applicator and running gears makes Defendant Dalton

13-L-53

liable under the doctrine of res ipsa loquitor as such a release of anhydrous ammonia would not occur absent the manufacturer's negligence.

57.     The incident on May 12, 2012, wherein Plaintiff Heimos' property was damaged, would not have occurred without negligence on the part of Defendant Dalton in the design, manufacturing, and testing of the anhydrous ammonia applicator and running gears; the products were under the control and management of Defendant Dalton at the time they were negligently designed, manufactured, and sold.

WHEREFORE, Plaintiffs NHIC and  Heimos prays judgment against Defendant Dalton – and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT XI

### (Strict Liability – Parker)

58.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

59.     Defendant Parker manufactured and designed the anhydrous ammonia hose and breakaway coupler to safely transfer anhydrous ammonia from the nurse tank to the anhydrous ammonia applicator.  Furthermore, the breakaway coupler was specifically designed to prevent the uncontrolled release of anhydrous ammonia in the event of a vehicular incident such as a hitch failure or the like, during which the hose would endure intense resistant force.

60.     Upon information and belief, the anhydrous ammonia hose and breakaway coupler were in substantially the same condition at the time of the incident as when they left the control of Defendant Parker.

13-L-53

61.     Defendant Parker is strictly liable to Plaintiffs NHIC and Heimos because the anhydrous ammonia hose and breakaway coupler were defective and unreasonably dangerous in at least the following respects:

      a.     The hose and breakaway coupler failed to prevent the leakage of anhydrous ammonia in the vehicular incident when the anhydrous ammonia hose became disconnected from the anhydrous ammonia applicator.

      b.     Defendant Parker failed to provide adequate, proper, and reasonable information, instructions, and warnings regarding the maintenance and use of the anhydrous ammonia hose and breakaway coupler, including hazards associated with their intended, recommended, and foreseeable use.

62.     Defendant Parker is strictly liable to Plaintiffs NHIC and Heimos because the aforementioned defects were the direct and proximate cause of the injury described above.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant Parker – and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT X

### (Negligence – Parker)

63.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

64.     Defendant Parker was negligent by failing to use ordinary care in designing, manufacturing, and selling the anhydrous ammonia hose and breakaway coupler when it knew or should have known that they were defective and unreasonably dangerous when put to its

intended use in that the anhydrous ammonia hose and breakaway coupler could inadvertently fail to stop the release of anhydrous ammonia in a vehicular incident.

65.     Defendant Parker's negligence in designing, assembling, manufacturing, selling, and distributing the anhydrous ammonia hose and breakaway coupler makes Defendant Parker liable under the doctrine of res ipsa loquitor as such a release of anhydrous ammonia would not occur absent the manufacturer's negligence.

66.     The incident on May 12, 2012, wherein Plaintiff Heimos' property was damaged, would not have occurred without negligence on the part of Defendant Parker in the design, manufacturing, and testing of the anhydrous ammonia hose and breakaway coupler; the products were under the control and management of Defendant Parker at the time they were negligently designed, manufactured, and sold.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant Parker – and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT XI

### (Strict Liability – Chemi-trol and /or American Welding & Tank)

67.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

68.     Defendant Chemi-trol and/or American Welding & Tank manufactured, designed and assembled the nurse tank identified by serial number 802815 and utilized by Defendant Herrmann on or about May 12, 2012.

69.     Upon information and belief, the nurse tank existed on the day of the vehicular incident mentioned here in substantially the same condition as when it left Defendant Chemi-trol and/or American's control.

70.     Defendants Chemi-trol and/or American are strictly liable to Plaintiffs because the anhydrous ammonia nurse tank was defective and unreasonably dangerous in at least the following respects:

      a.     as designed, manufactured and/or assembled a physical defect in the tank caused it to have a propensity to fail suddenly and unexpectedly when put to its reasonably anticipated use.

      b.     Defendants Chemi-trol and/or American failed to provide adequate, proper, and reasonable information, instructions, and warnings regarding the maintenance and use of the anhydrous ammonia nurse tank, including hazards associated with the intended, recommended, and foreseeable use of the anhydrous ammonia nurse tank.

      c.     Defendants Chemi-trol and/or American failed to provide adequate, proper, and reasonable information, instructions, and warnings regarding the maintenance and use of the nurse tank including hazards associated with the intended, recommended, and foreseeable use of the tank.

71.     Defendants Chemi-trol and/or American are strictly liable to Plaintiffs NHIC and Heimos because the aforementioned defect was the direct and proximate cause of the injury described above.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendants Chemi-trol and/or American – and all defendants jointly and severally – for a sum in excess of

Fifty Thousand Dollars ($50,000.00) that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT XII

### (Negligence – Chemi-trol and/or American)

72.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

73.     Chemi-trol and/or American were negligent by failing to use ordinary care in designing, manufacturing, and selling the anhydrous ammonia nurse tank when it knew or should have known that it was defective and unreasonably dangerous when put to its intended use in that the anhydrous ammonia nurse tank could inadvertently release anhydrous ammonia when involved in a vehicular incident.

74.     Defendant Chemi-trol and/or American's negligence in designing, assembling, manufacturing, selling, and distributing the anhydrous ammonia nurse tank makes Defendant Chemi-trol and/or American liable under the doctrine of res ipsa loquitor as such a release of anhydrous ammonia would not occur absent the manufacturer's negligence.

75.     The incident on May 12, 2012, wherein Plaintiff's property was damaged, would not have occurred without negligence on the part of Chemi-trol and/or American in the design, manufacturing, and testing of the anhydrous ammonia nurse tank; the product was under the control and management of Defendant Chemitrol and/or American at the time it was negligently designed, manufactured, and sold.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant Chemi-trol and/or American – and all defendants jointly and severally – for a sum in excess of

Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

## COUNT XIII

### (Negligence – Mr. and/or Mrs. Herrmann)

76.     The facts and allegations contained in the paragraphs above are incorporated herein by reference.

77.     Defendant Mr. and/or Mrs. Herrmann rented and used Defendant Handy's anhydrous ammonia equipment.

78.     Defendant Mr. and/or Mrs. Herrmann owed a duty to Plaintiffs NHIC and Heimos to exercise reasonable care to guard against any injury which might naturally flow as a reasonably probable and foreseeable consequence of his fertilizing efforts.

79.     Defendant Mr. and/or Mrs. Herrmann are negligently liable to Plaintiffs because Defendant Mr. and/or Mrs. Herrmann deviated from the proper standard of care by improperly and unsafely operating the anhydrous ammonia equipment resulting in a vehicular incident in at least the following respects:

    a.    Defendant Mr. and/or Mrs. Herrmann incorrectly and ineffectively and incompletely connected the anhydrous ammonia hose to the nurse tank.

    b.    Defendant Mr. and/or Mrs. Herrmann improperly and ineffectively connected the hitches on the anhydrous ammonia applicator and the running gears for the nurse tank.

    c.    Defendant Mr. and/or Mrs. Herrmann failed to ensure or confirm that the hitches were properly secured between the applicator and the nurse tank before attempting to pull the mechanisms.

d.   Defendant Mr. and/or Mrs. Herrmann failed to adequately inspect the equipment he rented from Defendant Handy prior to using the equipment.

e.   Defendant Mr. and/or Mrs. Herrmann failed to adequately remedy, repair, correct, or fix any deviation in the condition of the rented equipment from the conditions expected of safe equipment for the application of anhydrous ammonia.

f.   Defendant Mr. and/or Mrs. Herrmann failed to take reasonable precautions to prevent the escape of anhydrous ammonia from the nurse tank.

g.   Defendant Mr. and/or Mrs. Herrmann failed to attempt to halt the escape of anhydrous ammonia.

h.   Defendant Mr. and/or Mrs. Herrmann failed to act quickly in attempting to slow or stop the escape of anhydrous ammonia.

i.   Defendant Mr. and/or Mrs. Herrmann improperly and unsafely used the equipment rented from Defendant Handy.

j.   Defendant Mr. and/or Mrs. Herrmann failed to warn neighbors, and particularly Plaintiff Heimos, of the vehicular incident he caused and its resultant danger to nearby persons and property.

k.   Defendant Mr. and/or Mrs. Herrmann's negligence in using the anhydrous ammonia equipment makes them liable under the doctrine of *res ipsa loquitor* as such a chemical leak would not occur absent their negligence. The incident on May 12, 2012, wherein Plaintiff Heimos' property was destroyed, would not have occurred without negligence on the part of

Defendant Mr. and/or Mrs. Herrmann in the operation of the anhydrous ammonia equipment.

80.     Defendant Mr. and/or Mrs. Herrmann is negligently liable to Plaintiffs NHIC and Heimos because the aforementioned deviations from the proper standard of care were the direct and proximate cause of the injuries sustained by Plaintiffs NHIC and Heimos.

WHEREFORE, Plaintiffs NHIC and Heimos pray judgment against Defendant Mr. and/or Mrs. Herrmann — and all defendants jointly and severally – for a sum in excess of Fifty Thousand Dollars ($50,000.00), that is just, fair and adequate under the circumstances, and for its costs of suit.

Respectfully submitted

Dated:   May 30 , 2013

One of its Attorneys

Jack P. Cranley
Attorney at Law
IL ARDC# 6205652
2 Butternut Lane
Glen Carbon, IL 62034
Telephone #:  (618) 288-7788
Facsimile:  (618) 288-7789